PHILLIP A. TALBERT
Acting United States Attorney
JUSTIN L. LEE
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 2:20-CR-00011-JAM |
| Plaintiff, | PLEA AGREEMENT |
| v. | DATE: July 27, 2021 |
| ANGEL GIOVANI BELTRAN, | TIME: 9:30 a.m. |
| | COURT: Hon. John A. Mendez |
| Defendant. | |

## I.   INTRODUCTION

### A.   Scope of Agreement

The Indictment in this case charges the defendant with conspiracy to distribute and to possess with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1) and possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1). This document contains the complete plea agreement between the United States Attorney's Office for the Eastern District of California (the "government") and the defendant regarding this case. This plea agreement is limited to the United States Attorney's Office for the Eastern District of California and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities.

///
///

### B. Court Not a Party

The Court is not a party to this plea agreement. Sentencing is a matter solely within the discretion of the Court, and the Court may take into consideration any and all facts and circumstances concerning the criminal activities of defendant, including activities that may not have been charged in the Indictment. The Court is under no obligation to accept any recommendations made by the government or defense counsel. The Court may in its discretion impose any sentence it deems appropriate up to and including the statutory maximum stated in this plea agreement.

If the Court should impose any sentence up to the maximum established by the statute, the defendant cannot, for that reason alone, withdraw his guilty plea, and he will remain bound to fulfill all of the obligations under this plea agreement. The defendant understands that no one—not the prosecutor, not defense counsel, not the Court—can make a binding prediction or promise regarding the actual sentence he will receive.

## II. DEFENDANT'S OBLIGATIONS

### A. Guilty Plea

The defendant will plead guilty to Count One of the Indictment, charging conspiracy to distribute and possess with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(a)(1). The defendant agrees that he is in fact guilty of this charge and that the facts set forth in the Factual Basis for Plea attached hereto as Exhibit A are accurate. The defendant agrees that this plea agreement will be filed with the Court and become a part of the record of the case.

The defendant agrees that the statements made by him in signing this Agreement, including the factual admissions set forth in the factual basis, shall be admissible and useable against the defendant by the United States in any subsequent criminal or civil proceedings. The defendant waives any rights under Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence, to the extent that these rules are inconsistent with this paragraph or with this Agreement generally.

///

**B.** **Sentencing Recommendation**

The defendant and his counsel will recommend whatever sentence they believe is appropriate under 18 U.S.C. § 3553(a).

**C.** **Fine**

The parties will jointly recommend that the Court waive imposition of a fine because the defendant does not have the apparent ability to pay a fine.

**D.** **Special Assessment**

The defendant agrees to pay a special assessment of $100 at the time of sentencing by delivering a check or money order payable to the United States District Court to the United States Probation Office immediately before the sentencing hearing. If the defendant is unable to pay the special assessment at the time of sentencing, he agrees to earn the money to pay the assessment, if necessary by participating in the Inmate Financial Responsibility Program.

**E.** **Defendant's Violation of Plea Agreement or Withdrawal of Plea**

If the defendant, violates this plea agreement in any way, withdraws his plea, or tries to withdraw his plea, this plea agreement is voidable at the option of the government. The government will no longer be bound by its representations to the defendant concerning the limits on criminal prosecution and sentencing as set forth herein. One way a defendant violates the plea agreement is to commit any crime or provide any statement or testimony which proves to be knowingly false, misleading, or materially incomplete. Any post-plea conduct by a defendant constituting obstruction of justice will also be a violation of the agreement. The determination whether the defendant has violated the plea agreement shall be decided under a probable cause standard.

If the defendant violates the plea agreement, withdraws his plea, or tries to withdraw his plea, the government shall have the right: (1) to prosecute the defendant on any of the counts to which he pleaded guilty; (2) to reinstate any counts that may be dismissed pursuant to this plea agreement; and (3) to file any new charges that would otherwise be barred by this plea agreement. The defendant shall thereafter be subject to

prosecution for any federal criminal violation of which the government has knowledge, including perjury, false statements, and obstruction of justice. The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

By signing this plea agreement, the defendant agrees to waive any objections, motions, and defenses that the defendant might have to the government's decision to exercise the options stated in the previous paragraph. Any prosecutions that are not time-barred by the applicable statute of limitations as of the date of this plea agreement may be commenced in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this plea agreement and the commencement of any such prosecutions. The defendant agrees not to raise any objections based on the passage of time with respect to such counts including, but not limited to, any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment to any counts that were not time-barred as of the date of this plea agreement.

In addition: (1) all statements made by the defendant to the government or other designated law enforcement agents, or any testimony given by the defendant before a grand jury or other tribunal, whether before or after this plea agreement, shall be admissible in evidence in any criminal, civil, or administrative proceedings hereafter brought against the defendant; and (2) the defendant shall assert no claim under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule, that statements made by the defendant before or after this plea agreement, or any leads derived therefrom, should be suppressed. By signing this plea agreement, the defendant waives any and all rights in the foregoing respects.

### III. THE GOVERNMENT'S OBLIGATIONS

#### A. Dismissals

The government agrees to move, at the time of sentencing, to dismiss without prejudice the remaining counts in the pending Indictment. The government also agrees

not to reinstate any dismissed count except if this agreement is voided as set forth herein, or as provided in II.E (Defendant's Violation of Plea Agreement) and VII.B (Waiver of Appeal) herein.

### B. Recommendations

#### 1. Incarceration Range

The government will recommend that the defendant be sentenced to the low-end of the applicable guideline range for his offense, as determined by the Court. The government may recommend whatever it deems appropriate as to all other aspects of sentencing.

#### 2. Term of Supervised Release

The government will recommend that the defendant be sentenced to a term of supervised release of 60 months.

#### 3. Acceptance of Responsibility

The government will recommend a two-level reduction (if the offense level is less than 16) or a three-level reduction (if the offense level reaches 16) in the computation of defendant's offense level if he clearly demonstrates acceptance of responsibility for his conduct as defined in U.S.S.G. § 3E1.1. This includes the defendant meeting with and assisting the probation officer in the preparation of the pre-sentence report, being truthful and candid with the probation officer, and not otherwise engaging in conduct that constitutes obstruction of justice within the meaning of U.S.S.G § 3C1.1, either in the preparation of the pre-sentence report or during the sentencing proceeding.

### C. Use of Information for Sentencing

The government is free to provide full and accurate information to the Court and the United States Probation Office ("Probation"), including answering any inquiries made by the Court and/or Probation, and rebutting any inaccurate statements or arguments by the defendant, his attorney, Probation, or the Court. The defendant also understands and agrees that nothing in this Plea Agreement bars the government from defending on appeal or collateral review any sentence that the Court may impose.

## IV. ELEMENTS OF THE OFFENSE

At a trial, the government would have to prove beyond a reasonable doubt the following elements of the offense to which the defendant is pleading guilty:

As to Count One, conspiracy to distribute and possess with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(a) [9th Cir. Crim. Jury Instr. 9.19]:

1. First, between on or about September 4, 2019, and on September 19, 2019, there was an agreement between two or more person to distribute or possess with the intent to distribute methamphetamine; and
2. Second, the defendant joined in the agreement knowing of its purpose and intending to help accomplish that purpose, specifically, the distribution of methamphetamine.

The defendant fully understands the nature and elements of the crime charged in the Indictment to which he is pleading guilty, together with the possible defenses thereto, and has discussed them with his attorney.

## V. MAXIMUM SENTENCE

### A. Maximum Penalty

The maximum sentence that the Court can impose is a life-term of incarceration, a fine of $10,000,000, a term of supervised release of at least five years and up to life, and a special assessment of $100. The charge to which defendant is pleading guilty carries a ten-year mandatory minimum sentence, absent a motion by the government for reduction pursuant to 18 U.S.C. § 3553(e),(f). In addition, the defendant may be ineligible for certain federal and/or state assistance and/or benefits, pursuant to 21 U.S.C. § 862.

### B. Violations of Supervised Release

The defendant understands that if he violates a condition of supervised release at any time during the term of supervised release, the Court may revoke the term of supervised release and require the defendant to serve up to five years of additional imprisonment.

## VI. SENTENCING DETERMINATION

### A. Statutory Authority

The defendant understands that the Court must consult the Federal Sentencing Guidelines and must take them into account when determining a final sentence. The defendant understands that the Court will determine a non-binding and advisory guideline sentencing range for this case pursuant to the Sentencing Guidelines and must take them into account when determining a final sentence. The defendant further understands that the Court will consider whether there is a basis for departure from the guideline sentencing range (either above or below the guideline sentencing range) because there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines. The defendant further understands that the Court, after consultation and consideration of the Sentencing Guidelines, must impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a).

## VII. WAIVERS

### A. Waiver of Constitutional Rights

The defendant understands that by pleading guilty he is waiving the following constitutional rights: (a) to plead not guilty and to persist in that plea if already made; (b) to be tried by a jury; (c) to be assisted at trial by an attorney, who would be appointed if necessary; (d) to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, constitutional challenges to the statutes of conviction, and other pretrial motions that have been filed or could be filed; (e) to subpoena witnesses to testify on his behalf; (f) to confront and cross-examine witnesses against him; and (g) not to be compelled to incriminate himself.

### B. Waiver of Appeal and Collateral Attack

The defendant understands that the law gives the defendant a right to appeal his guilty plea, conviction, and sentence. The defendant agrees as part of his plea, however, to give up the right to appeal any aspect of the guilty plea, the conviction, and the sentence

imposed in this case. The defendant specifically waives his right to challenge the constitutionality of the statute of conviction, including any appellate claims under *Blackledge v. Perry*, 417 U.S. 21 (1974) and *Class v. United States*, 138 S. Ct. 798, 803 (2018).

Notwithstanding the defendant's waiver of appeal, the defendant will retain the right to appeal if one of the following circumstances occurs: (1) the sentence imposed by the District Court exceeds the statutory maximum; and/or (2) the government appeals the sentence in the case. The defendant understands that these two circumstances occur infrequently and that in all other cases this Agreement constitutes a complete waiver of all appellate rights.

In addition, the defendant gives up any right to bring a collateral attack, including a motion under 28 U.S.C. § 2255 or § 2241, challenging any aspect of the guilty plea, conviction, and sentence imposed in this case. A "collateral attack" in this circumstance means filing a motion in this Court, or any other court challenging any aspect of his guilty plea, conviction, or sentence. Therefore, the defendant cannot later decide that he is unhappy with his plea, conviction, or sentence and seek to amend, alter, withdraw, or overturn it.

Notwithstanding the agreement in paragraph III.A (Dismissals) above that the government will move to dismiss counts against the defendant, if the defendant ever attempts to vacate his plea, dismiss the underlying charges, or modify or set aside his sentence on any of the counts to which he is pleading guilty, the government shall have the rights set forth in paragraph II.E (Defendant's Violation of Plea Agreement) herein.

### C. Impact of Plea on Defendant's Immigration Status

The defendant is not a citizen of the United States. The defendant is pleading guilty to a drug trafficking felony. Under federal law, the defendant will be deported following service of his sentence in this case. The defendant nevertheless affirms that he wants to plead guilty regardless of the immigration consequences, including his automatic removal from the United States.

## VIII. ENTIRE PLEA AGREEMENT

Other than this plea agreement, no agreement, understanding, promise, or condition between the government and the defendant exists, nor will such agreement, understanding, promise, or condition exist unless it is committed to writing and signed by the defendant, counsel for the defendant, and counsel for the United States.

## IX. APPROVALS AND SIGNATURES

### A. Defense Counsel

I have read this plea agreement and have discussed it fully with my client. The plea agreement accurately and completely sets forth the entirety of the agreement. I concur in my client's decision to plead guilty as set forth in this plea agreement.

Dated: 7-23-21

KYLE KNAPP
Counsel for Defendant

### B. Defendant

I have read this plea agreement carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines that may apply to my case. No other promises or inducements have been made to me, other than those contained in this plea agreement. In addition, no one has threatened or forced me in any way to enter into this plea agreement. Finally, I am satisfied with the representation of my attorney in this case.

Dated: 7-23-21

ANGEL BELTRAN,
Defendant

C. **Attorney for the United States**

I accept and agree to this plea agreement on behalf of the government.

Dated: July 23, 2021

PHILLIP A. TALBERT
Acting United States Attorney

By: /s/ Justin L. Lee
JUSTIN L. LEE
Assistant United States Attorney

# EXHIBIT A

## Factual Basis for Plea

If this matter proceeded to trial, the United States would establish the following facts beyond a reasonable doubt:

On September 5, 2019, an undercover law enforcement officer met with co-defendant Raul Covarrubias at a public parking lot in Roseville, within the State and Eastern District of California. Covarrubias gave the undercover officer two vacuum-sealed packages of methamphetamine in exchanged for $1,400 in cash. In total, the mixture and substance containing methamphetamine weighed 946 grams.

On September 10, 2019, the undercover officer negotiated with Covarrubias to purchase an additional five pounds of methamphetamine. Covarrubias told the undercover officer that he would be unable to come to Sacramento to complete the transaction, but instead his source of drug supply would come to Sacramento to complete the deal. Covarrubias then gave the undercover officer the phone number the co-defendant Jonathan Beltran-Ochoa. On September 11, 2019, the undercover officer met with Beltran-Ochoa at a public parking lot in Roseville and purchased 4.5 pounds of methamphetamine in exchange for $6,300 in cash.

On September 16, 2019, Beltran-Ochoa arranged to sell 23 pounds of methamphetamine to the undercover officer. Beltran-Ochoa agreed to deliver the methamphetamine on September 19 in Roseville, California. On September 19, 2019, Beltran-Ochoa, co-defendants Bryan Favela, Angel Beltran, and Isaiah Meza drove up to Roseville from Southern California. Prior to meeting with law enforcement, Beltran-Ochoa transferred a bag containing methamphetamine from his car to Meza's car. Angel Beltran and Meza then waited in a nearby public parking lot while Beltran-Ochoa and Favela met with the undercover law enforcement officer. During the meeting with the undercover law enforcement officers, Beltran-Ochoa and Favela spotted a law enforcement surveillance unit. Beltran-Ochoa then called Angel Beltran and Meza and directed them

to leave the nearby parking lot where they were waiting while holding the methamphetamine. Angel Beltran and Meza immediately left the parking lot in Meza's car. Shortly after leaving the parking lot, they were stopped and arrested by law enforcement. Angel Beltran and Meza were arrested while in possession of 10,149 grams of methamphetamine (mixture and substance). The suspected methamphetamine was subsequently tested and determined to be 98% pure methamphetamine for total amount of 9.15 kg of methamphetamine actual.

Beltran-Ochoa and Favela were arrested at a different location. Thirty minutes after the arrest of Angel Beltran, Meza, Beltran-Ochoa, and Favela, the undercover officer received a series of eleven text messages from Covarrubias. In the messages, Covarrubias threatened that the undercover officer and the undercover officer's family would be killed.

Methamphetamine is a Schedule II controlled substance.

I, ANGEL BELTRAN, agree to the facts and stipulations contained therein.

Dated: 7-23-21

_____
ANGEL BELTRAN, Defendant